UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   For Online Publication Only
WILLIAM DOUGLAS,
                                                               **ORDER**
                            Plaintiff,      17-CV-00694 (JMA)

              -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                          Defendant.
----------------------------------------------------------------------X

**APPEARANCES**

    Howard D. Olinsky
    Olinsky Law Group
    300 South State Street, Suite 420
    Syracuse, NY 13202
    *Attorney for Plaintiff*

    Candace Scott Appleton
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

        Plaintiff William Douglas ("Plaintiff") seeks review of the final decision by the Commissioner of Social Security, reached after a hearing before an administrative law judge, denying Plaintiff disability insurance benefits under Title II of the Social Security Act (the "Act"). The case is before the Court on the parties' cross-motions for judgment on the pleadings. Because the administrative law judge's decision was supported by substantial evidence and applied the proper legal standards, Plaintiff's motion for judgement on the pleadings is DENIED, and defendant's cross-motion is GRANTED.

FILED
CLERK
3/4/2019 9:56 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

# I. BACKGROUND

## A. Procedural History

On April 23, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability as of July 29, 2013, due to high blood pressure, depression, anxiety, leg pain, prostate cancer, bi-polar disorder, ulcers, and sleep apnea. (Tr. 67, 177.[1]) Following denial of his application, Plaintiff requested a hearing and appeared with his attorney for an administrative hearing before Administrative Law Judge Patrick Kilgannon (the "ALJ") on May 19, 2015. (Tr. 40–59.)

In a decision dated July 31, 2015, the ALJ denied Plaintiff's claim, finding that he was not disabled under the Act. (Tr. 10–19.) Plaintiff timely filed a request for review before the Appeals Council. (Tr. 33–36.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 6, 2016. (Tr. 1–6.) This appeal followed. (ECF No. 1.)

## B. Plaintiff's Background and Testimony

Plaintiff was born on January 6, 1951 and was 62 years old when he filed the instant application for disability insurance benefits. (Tr. 152.) Plaintiff indicated that he has a high school education and worked as a machine operator from January 1993 to January 1999, as a manager at a printing company from January 1999 to July 2013, and as a car salesperson for about six months in 2003. (See 167.)

In a function report dated October 25, 2013, Plaintiff stated that he had sleep apnea and used a continuous positive airway pressure (CPAP) machine. (Tr. 193.) The pain in his legs and dizziness made dressing and bathing difficult. (Id.) His wife did most the cooking, but he could

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 25.)

prepare simple meals. (Tr. 194–95.) He did small household repairs, was able drive an automobile, and could shop with his wife for about an hour each week. (Tr. 194–96.) He watched television all the time. (Tr. 196.) He went to group meetings for depression, anger, and drug and alcohol abuse three times per week. (Tr. 197.) He reported that he could not lift heavy objects or stand for long periods of time because his legs "felt like cement" and he often lost his balance. (Id.) He did not kneel, had problems getting up from a seated position, and could not climb stairs. (Tr. 198.) He could walk for five minutes before stopping to rest for ten to fifteen minutes. (Tr. 199.)

At an administrative hearing held on May 19, 2015, Plaintiff testified that he experienced pain from his neck down to his lower back, which radiated into his legs. (Tr. 52.) He said that the pain in his right leg was worse than the left. (Id.) He had been using a cane for a year and said that he could sit for one half hour "tops." (Id.) He could stand for up to fifteen minutes in one spot but could not walk one block. (Tr. 52–53.) He experienced chest pain that radiated into his left arm. (Tr. 54.) He had numbness in his left hand when he woke up in the morning. (Id.) He also testified that his son and wife did most of the household chores, but that he tried to help with laundry or cleaning. (Tr. 55.) He maintained that he cannot garden, take out the garbage, or perform snow removal. (Id.)

## C. Relevant Medical Evidence

The record does not include an opinion from a treating source physician setting forth any specific limitations. In addition to some treatment notes, the record also includes opinions from Dr. Jerome Caiati, a consultative examiner, and Dr. Louis Fuchs, a non-examining medical expert.

### 1. Treatment Records

Plaintiff's treatment records include, inter alia, self-reported complaints of chronic lower back pain, neck pain, and leg pain and weakness. (See Tr. 253, 299–300, 351, 368–94, 400, 432,

3

451, 453, 458–59, 462–66.) Plaintiff also informed a pain management specialist that his neck pain was aggravated when he lifted things at work, and that he experienced heel pain at the end of the workday. (Tr. 389, 392.)

A 2009 MRI scan of Plaintiff's lumbar spine revealed mild multilevel degenerative disc disease, a L2-L3 herniated disc/protrusion impressing a nerve root, a L3-L4 herniated disc and L4-L5 formainal disc/ridge complex impressing a nerve root, and L5-S1 degenerative disc disease with foraminal narrowing. (Tr. 226.) A 2010 MRI scan of Plaintiff's cervical spine revealed a small herniation at C4-C5, moderate right and mild left neuroforaminal stenosis at C5-C6, a mild central canal and moderate bilateral neuroforaminal senosis at C6-C7. (Tr. 253.) Results from a 2013 MRI of Plaintiff's cervical spine were similar to that of the 2010 MRI. (See Tr. 395.)

Plaintiff demonstrated tenderness in his left cervical paravertebral muscles, reduced cervical range of motion, no edema in his extremities, and full muscle strength. (Tr. 254, 378, 381, 384, 387, 390, 393.) Neck and cardiovascular examinations were normal. (Tr. 345. 349.) Motor strength was full without focal defects (Tr. 349.) Plaintiff was diagnosed with pinched nerves (radiculopathy) in the lower back and neck. (Tr. 459, 462, 465.) Plaintiff's physical examination results were within normal range, showing full range of motion in his extremities, positive straight leg testing, and a normal neurological examination. (Tr. 369, 445, 459, 462.) Records also showed muscle weakness, backache, cervical disc displacement and herniation, and lumbar disc displacement (See Tr. 369, 372, 375, 378, 387, 390.)

A cardiac catheterization in 2009 revealed normal left ventricle function and normal coronary arteries. (Tr. 237–41.) A subsequent echocardiogram revealed mild concentric left ventricular hypertrophy without dilatation and mild tricuspid insufficiency. (Tr. 651.) Another echocardiogram revealed a dilated left ventricle, and a mild mitral and tricuspid insufficiency. (Tr.

427.) A cardiac examination reported normal findings aside from a notation of "soft bruit" present in the carotid arteries (Tr. 435, 475.) Upon being discharged from a hospital in February 2015, Plaintiff was diagnosed with chest pain with a high risk of acute coronary syndrome, hypertension, bipolar disorder, and diastolic congestive heart failure. (Id.)

A psychiatric evaluation showed that Plaintiff was not significantly limited in his abilities to follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration at a level sufficient for low level of employment, maintain a regular schedule, learn new tasks, make appropriate simple work-related decisions, and appropriately deal with stress. (Tr. 357–58.) The examiner also found that Plaintiff has mild to moderate limitations in performing complex tasks, and moderate to intermittently marked limitations in relating adequately with others. (Tr. 358.)

### 2. Jerome Caiati, M.D.

In November 2013, Plaintiff underwent a consultative examination with Dr. Jerome Caiati. (Tr. 360–365.) Plaintiff complained of hypertension, cervical and lumbar pain, a history of transient ischemic attacks that resolved within twenty-four hours, and a myocardial infarction in 2011 with intermittent chest pain. (Tr. 360.) Dr. Caiati observed that Plaintiff was obese, in no acute distress, and had a normal gait both with and without a cane. (Tr. 361.) Plaintiff could heel-toe walk without difficulty and squat half of the way while holding on and complaining of pain. (Id.) Plaintiff also displayed limitations in cervical and lumbar ranges of motion, and some limitations in the lower extremities. (Tr. 362.) Dr. Caiati opined that Plaintiff "has an unrestricted ability in sitting, standing, walking, reaching, pushing, climbing and pulling" and "minimal limitations in [] bending and a minimum to mild limitation in lifting." (Tr. 17 referring to Tr. 364.) The ALJ gave "some weight" to Dr. Caiati's opinion, which the ALJ found to be "supported by

the exam, wherein [Plaintiff] displayed some limitations in range of motion," as well as the fact that Plaintiff received conservative care. (Tr. 17.)

### 3. Louis Fuchs, M.D.

In May 2015, Dr. Louis Fuchs, a non-examining medical expert, reviewed Plaintiff's medical evidence and completed an interrogatory. (Tr. 792–802.) Dr. Fuchs opined that Plaintiff:

>  (1) could lift and carry up to ten pounds continuously and up to twenty pounds occasionally;
> 
> (2) sit, stand, and walk for one hour at a time before interruption;
> 
> (3) could stand and walk for three hours total and sit for eight hours total during an eight-hour work day;
> 
> (4) does not need a cane to ambulate;
> 
> (5) has no limitations in reaching, handling, fingering, feeling, pushing, or pulling;
> 
> (6) could frequently use foot controls; and could occasionally perform most postural activities (climb stairs and ramps, balance, stoop, kneel, crouch, and crawl), but could never climb ladders or scaffolds.

(Tr. 793–796.) Dr. Fuchs also noted "no significant neurological or orthopedic deficits, except mild decrease in left knee flexion and limited straight leg raising." (Tr. 17 referring to Tr. 800.) The ALJ gave "significant weight" to Dr. Fuchs' opinion because it was "consistent with the orthopedic treatment records, which included essentially conservative care." (Tr. 17.)

### D.  The ALJ's Decision

The ALJ issued his decision on July 31, 2015, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520(a). (Tr. 10–19.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 29, 2013. (Tr. 12.) At step two, the ALJ found that Plaintiff's obesity, cervical and lumbar degenerative disc disease, and hypertension were severe. (Id.) At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity

of any of the regulations' listed impairments. (Tr. 13–14.) Specifically, the ALJ considered Listing 1.00 for musculoskeletal impairments and Listing 4.00 for cardiovascular impairments. (Tr. 14.)

The ALJ then addressed step four, first considering Plaintiff's residual functional capacity ("RFC"). An RFC determination identifies what work a claimant can still perform, despite his limitations. See C.F.R. § 404.1545(a). The ALJ found that Plaintiff retained the RFC to perform the full range of light work,[2] "which includes the ability to sit and to stand/walk six hours each in an eight-hour work day and lift/carry ten pounds frequently and twenty pounds occasionally," except that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, scaffolds, ramps, and stairs. (Tr. 14–18.)

Upon consideration of the evidence, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. 18.)

The ALJ found that "[Plaintiff], who has been receiving retirement benefits since October of 2013, was treated for numerous conditions during the relevant period" but "none of [Plaintiff's] conditions appear[] to be so disabling to have precluded all vocational activity." (Tr. 18.) The ALJ also explained that the RFC assessment to be "supported by the consultative examination and the treatment records." (Tr. 18.)

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996).

Based on the RFC, the ALJ concluded that Plaintiff is capable of performing past relevant work as an automobile salesperson. (Tr. 18.) Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from July 29, 2013 through the date of his decision. (Tr. 18–19.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. See 20 C.F.R. § 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step

five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**B. Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted when the Commissioner has failed to provide a full and fair hearing, to make necessary findings, or to have correctly applied the law and regulations. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); see Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999). Remand is also appropriate when an

ALJ overlooks an important piece of evidence. See 42 U.S.C. § 405(g) (permitting the court to order the Commissioner to review additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); see also Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968) (directing remand to allow the Secretary to consider a major piece of evidence ignored by the hearing examiner).

### C. The ALJ's RFC Determination

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)). In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where, as here, it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

"[A]n ALJ's RFC determination 'must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, "we do not require that [the ALJ] have mentioned every item of

testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Only "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). For example, the Second Circuit has explained that "[w]here an ALJ's [RFC] analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id.

Plaintiff argues that remand is warranted because the ALJ's RFC determination was a "forgone, conclusory finding" as the ALJ's decision "does not indicate how the RFC is supported by the medical evidence." (Pl.'s Mem. 14.) Specifically, Plaintiff claims the ALJ erred by: (1) failing to explain why it did not adopt a particular ambulatory limitation in Dr. Fuchs' opinion, despite giving Dr. Fuchs' opinion "significant weight"; (2) ignoring specific evidence in the record concerning Plaintiff's ambulatory limitations; and (3) posing hypotheticals to the vocational expert that did not include "the full extent of Plaintiff's impairments." (Pl.'s Mem. 14–16.) Plaintiff also contends that the ALJ's credibility finding is "confusing" and "vague" because it "fails to clarify the key statements that the ALJ found lacking, and fails to specify what evidence support his conclusions." (Pl.'s Mem. 12.) Plaintiff's arguments are unavailing.

11

### 1. The ALJ's RFC Analysis Provides an Adequate Basis for Judicial Review and is Supported by Substantial Evidence in the Record

Remand is unnecessary because the ALJ's RFC analysis affords an adequate basis for judicial review and is supported by substantial evidence. The ALJ summarized the evidence in the record that reveals the nature and extent of Plaintiff's physical limitations and work capacity, including medical assessments from examining and non-examining medical experts and Plaintiff's subjective complaints of neck, back, and leg pain. (See Tr. 14–18.) Specifically, assessments show only mild findings, such as back tenderness, occasional restricted range of motion in the lumbar spine, some leg weakness, and an unsteady gait. (See Tr. 16–17 referring to Tr. 351, 353–54; see also Tr. 451–53, 455–59.) An MRI scan of Plaintiff's neck and two MRI scans Plaintiff's back also reveal only "mild" and "moderate" findings. (See Tr. 15 referring to Tr. 226, 253, 395.) Treatment notes show that Plaintiff received essentially conservative treatment, consisting of adjustments to his prescribed medications and physical therapy. (Tr. 15–16 referring to Tr. 225, 368. 461.) Thus, more than a mere scintilla of evidence supports the ALJ's determination that the Plaintiff retains the RFC to perform "the full range of light work . . . which includes the ability to sit and to stand/walk six hours each in an eight-hour workday and lift/carry ten pounds frequently and twenty pounds occasionally . . . [and] occasionally climb ladders, ropes, scaffolds, [] ramps, or stairs, balance, stoop, or kneel, crouch or crawl." (Tr. 14.)

Plaintiff points out that the ALJ did not explain why it did not adopt one of the ambulatory limitations contained in Dr. Fuchs' opinion—that "Plaintiff could only stand/walk up to 3 hours total during an eight-hour day"—despite giving Dr. Fuchs' opinion "significant weight." (Pl.'s Mem. 14–15.) This limitation, according to Plaintiff, is "wholly contradictory to the ALJ's RFC" determination that Plaintiff has "the ability to sit and to stand/walk six hours each in an eight-hour workday." (Id.) However, "where 'the evidence of record permits us to glean the rationale of an

12

ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (summary opinion) (quoting Mongeur, 722 F.2d at 1040).

The record supports the ALJ's decision not to include the three-hour limitation in Plaintiff's RFC determination. Specifically, the medical evidence, showing only mild to moderate limitations, does not support such a restrictive limitation in Plaintiff's ability to stand and walk. See supra. The ALJ also gave some weight to Dr. Caiati's opinion, a consultative examiner who stated that Plaintiff has no limitations in standing and walking, a normal gait with and without a cane, and full upper and lower body strength with only some limitations in ranges of motion. (See Tr. 17.) Although the ALJ did not explain, in any further detail, how he synthesized Dr. Fuchs' and Dr. Caiati's medical opinions into his RFC determination, the weight given to those medical opinions alongside the other medical evidence in the record makes apparent why the ALJ did not fully credit all of the limitations in Dr. Fuchs' opinion. "The absence of an express rationale does not prevent [the Court] from upholding the ALJ's determination . . . since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982). In Berry, the Second Circuit instructed that remand is appropriate when the reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record," but is unnecessary when the court is "able to look to other portions of the ALJ's decision and to clearly credible evidence [and then conclude] that [the ALJ's] determination [is] supported by substantial evidence." Berry, 675 F.2d 469. Here, the Court is able to glean the ALJ's rationale. In other words, the ALJ did not err by failing to explicitly address why he did not adopt the three-hour limitation in Dr. Fuchs' opinion because the

ALJ provided an adequate basis for the Court to review his decision and to conclude that the RFC determination is supported by substantial evidence.

Similarly, Plaintiff's argues that the ALJ "fail[ed] to address specific evidence within the record that discusses Plaintiff's limitation regarding ambulation."[3] (Pl.'s Mem. 16.) The "specific evidence" in question are records that largely recount Plaintiff's self-reported complaints. Although all but one of those complaints were mentioned in the ALJ's decision,[4] Plaintiff purports that "the ALJ's discussion of the evidence is nothing more than a regurgitation of the evidence in a manner that favors the Plaintiff, as he fails to logically connect any of what he has cited in a way that supports his determinations." (Id.) However, as previously noted, the ALJ need not explicitly reconcile every piece of evidence in the record that is contrary to the RFC determination with that determination. See Mongeur, 722 F.2d at 1040; see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every shred of medical testimony."). Such an explanation is unnecessary where, as here, the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence [and then conclude] that [the ALJ's] determination

---

[3] Specifically, Plaintiff argues that the ALJ did not discuss Plaintiff's limp, (Tr. 325, 400), severe pain after walking all day, (Tr. 392), pain that is exacerbated by moving his neck, (Tr. 386), weakness in his legs and difficulty balancing, (Tr. 351), reports to his treating providers on his ability to stand and sit for a long period of time and go up and down stairs, (Tr. 380, 453), or reduction in his overall quality of life (Tr. 452, 459). (See Pl.'s Mem. 16.)

[4] The ALJ mentioned Plaintiff's "antalgic" or "unsteady" gait, (Tr. 15, referring to 461; Tr. 16, referring to Tr. 351), "leg weakness," (Tr. 16 referring to Tr. 439), and "complaints of chronic neck and leg pain." (Tr. 16 referring to Tr. 351). The ALJ also mentioned Plaintiff's "left lower extremity weakness" or, as Plaintiff characterizes it, "severe pain after walking all day." (Tr. 15 referring to Tr. 392). Although the ALJ did not specifically mention Plaintiff's reports about his inability to stand and sit for long periods of time and use stairs, the ALJ noted that Plaintiff received care from Island Pain Specialist and North American Partners in Pain Management for complaints of neck, leg, and back pain and cited to the medical records containing these subjective reports. (Tr. 15, referring to Tr. 380, 453). And the ALJ's failure to mention Plaintiff's statement that his overall quality of life has been reduced as a result of his back pain, (See Tr. 452, 459), does not warrant remand because that evidence was not so crucial such that its omission from the ALJ's analysis might have influenced the ultimate determination. Cf., Carnevale, 393 F.2d at 891 ("Thus it is clear that in summarizing and sifting the evidence in this case, the Hearing Examiner totally ignored a major piece of evidence which might well have influenced his decision.").

[is] supported by substantial evidence." Berry, 675 F.2d 469.  The Court is able to conclude that the ALJ's RFC determination is supported by substantial evidence due to (1) the medical records showing only mild to moderate limitations in Plaintiff's ability to stand and walk; and (2) the weight given to Dr. Caiati's and Dr. Fuchs' opinions, which were rendered after a physical examination and a review of Plaintiff's medical records, respectively.  See supra.  Remand to clarify what is apparent in the record is unnecessary.

Plaintiff also argues that the ALJ erred by posing a hypothetical to the vocational expert (the "VE") that did not include Plaintiff's use of a cane and the three-hour limitation contained in Dr. Fuchs' opinion.  (Pl.'s Mem. 15.)  Plaintiff contends that "[t]his is error in itself, as VE testimony is only useful if a hypothetical includes the full extent of [Plaintiff's] impairments." (Id.)  Stated another way, Plaintiff contends that his use of a cane and the three-hour limitation in Dr. Fuchs' opinion should have been adopted in the ALJ's RFC determination.  The Second Circuit has instructed that "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflects the limitations and capabilities of the claimant involved."  McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  Here, the medical evidence in the record does not show that Plaintiff needed a cane to ambulate.  For example, there is no record that a doctor prescribed Plaintiff a cane, Dr. Caitati found that Plaintiff's gait was normal both with and without a cane, and Dr. Fuchs found that Plaintiff did not require a cane to ambulate.  (See Tr. 361, 794).  The inclusion of the three-hour limitation in the ALJ's hypothetical to the VE was also unnecessary because the hypothetical tracked an RFC determination supported by substantial evidence.  See supra.  In short, the ALJ's hypothetical to the VE was not flawed

15

because medical evidence supports the ALJ's decision to omit Plaintiff's use of a cane and the three-hour limitation in standing and walking.

### 2. The ALJ Set Forth His Credibility Determination with Sufficient Specificity

Plaintiff contends that the ALJ's credibility determination is "confusing" and "vague" because it "fails to clarify the key statements that the ALJ found lacking, and fails to specify what evidence support his conclusions." (Pl.'s Mem. 12.) However, "[a] finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligent plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988). The ALJ must also "assess subjective evidence in light of objective medical facts and diagnoses." Id. at 261. When a claimant's statements about his symptoms and limitations suggest a greater restriction of function than is demonstrated by the objective medical evidence, the Commissioner considers the following factors that are relevant in assessing a claimant's credibility: (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of pain or other symptoms, (iii) the precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of medication, (v) treatment other than medication used for relief of paid or other symptoms, (vi) any measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restriction due to pain or other symptoms. 20 C.F.R. § 416.929(c)(i)-(vii). Even if an ALJ does not explicitly recite these factors, "[t]he ALJ's credibility determination must be supported by substantial evidence." Leavitt v. Astrue, 08-CV-731S, 2010 WL 419970, at *4 (W.D.N.Y. Jan. 29, 2010); see Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) ("Although the ALJ did not explicitly recite the seven relevant factors, his credibility determination was supported by substantial evidence in the record."). Additionally, SSR 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or

are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [are] not entirely credible for the reasons explained in this decision." (Tr. 18.) Specifically, after considering Plaintiff's testimony regarding his employment history, pain in his neck, back, chest, and extremities, ability to prepare simple meals, drive, and perform small household repairs, the ALJ found that "none of [Plaintiff's] conditions appear[] to be so disabling to have precluded all vocational activity." (Tr. 18.) This reasoning is sufficiently specific and is supported by substantial evidence in the record. For example, the ALJ considered the medical evidence in the record showing mild findings and minimal to no limitations in sitting, standing, walking, and bending, and that Plaintiff did not require a cane to ambulate. (See Tr. 15 referring to Tr. 226, 254–55, 451–59, 461–62; Tr. 16 referring to Tr. 360–64, 371, 439; Tr. 17 referring to Tr. 360–65, 792–802.) And, according to his doctors, Plaintiff's treatment regimen was improving his pain, quality of life, and functional ability. (See Tr. 453, 455–58.) This evidence undercuts Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms. Although the ALJ's reasoning could have been better articulated and more thorough, it is clear to the Court that the ALJ's credibility finding was amply based on the record. See Battaglia v. Berryhill, 17-CV-3852, 2018 WL 1054371, at *4 (E.D.N.Y. Feb. 23, 2018) ("[I]t would have made for easier review if the ALJ had written: 'I find plaintiff not credible for the following reasons,' and then listed each of the points set forth above. But most of these are in her decision, and no particular stylistic form is required to facilitate judicial review. Under these circumstances, remanding for a re-determination of credibility would be a futile gesture.

17

The ALJ's determination of credibility was amply based on the record."). Remand for clarification as to which statements the ALJ found incredible and why is unnecessary.

Plaintiff also argues that the ALJ's credibility finding is erroneous because "the ALJ wrote his RFC determination prior to evaluating Plaintiff's credibility, and thus, it appears Plaintiff's subjective complaints were not properly considered in forming the RFC." (Pl.'s Mem. 11.) However, the order of paragraphs in the ALJ's decision is not an indication of the order in which the ALJ performed the analysis. "[N]o particular stylistic form is required to facilitate judicial review." See Battaglia, 2018 WL 1054371, at *4.

In sum, the ALJ's RFC determination is supported by substantial evidence because the ALJ appropriately evaluated the medical evidence in the record and set forth his credibility determination of Plaintiff with sufficient specificity.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS Commissioner's motion for judgment on the pleadings. The Clerk of the court is directed to enter judgment in favor of defendant and close the case.

**SO ORDERED.**

Dated: March 4, 2019
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE